**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| | ) | |
| PATRICIA A. BADGETT, | ) | |
| | ) | Case No. 1:17-cv-3478 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE INDIANAPOLIS HOUSING | ) | |
| AGENCY, BOARD OF COMMISSIONERS | ) | |
| OF THE INDIANAPOLIS HOUSING | ) | |
| AGENCY, and VALENCIA HIGHTOWER | ) | |
| in her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**VERIFIED COMPLAINT FOR PRELIMINARY INJUNCTION,**
**DECLARATORY, AND INJUNCTIVE RELIEF**

Plaintiff Patricia A. Badgett ("Plaintiff"), brings this Complaint against the Indianapolis Housing Agency ("IHA"), the Board of Commissioners of the Indianapolis Housing Agency ("Board") (collectively "Defendants"), and Valencia Hightower in her individual capacity ("Hightower"). Plaintiff claims that Defendants violated her rights under the Fourteenth Amendment, the First Amendment, the Fair Housing Act, and that Hightower in her individual capacity engaged in intentional infliction of emotional distress under Indiana state law. In support thereof, Plaintiff states as follows:

**JURISDICTION AND VENUE**

1. Under 42 U.S.C. § 1983 ("Section 1983"), Plaintiff seeks preliminary injunctive relief, declaratory relief, and permanent injunctive relief against Defendants for

committing acts, under state law, with the intent and for the purpose of depriving Plaintiff of rights secured under the United States Constitution and laws of the United States.

2. The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3613. Further, Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, and the general legal and equitable powers of this Court.

3. Plaintiff seeks actual and punitive damages against Hightower pursuant to Indiana tort law *e.g. Creek v. I.C.E. Assoc. Inc.*, 771 N.E.2d 1276 (Ind. Ct. App. 2002).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

5. Plaintiff is a resident of Indianapolis, Indiana. She currently resides at 555 Massachusetts Avenue (hereinafter "Barton Towers"), Indianapolis, Indiana 46204, which is a public housing project subsidized by the Department of Housing and Urban Development ("HUD"), under 42 U.S.C. §§ 1437 *et seq.*

6. IHA is a municipal corporation organized and existing under the laws of the State of Indiana. IHA owns and operates public housing facilities in the City of Indianapolis, including Barton Towers, for the purposes of providing decent, safe, and affordable housing to low-income individuals.

7. IHA is statutorily overseen by the Board pursuant to Ind. Code § 36-7-18-5, and the Board's members are appointed by the Mayor of the City of Indianapolis, the City-County Council of Marion County and Indianapolis, and IHA's Resident's Council. *Id.* The Executive Director of IHA is appointed by the Board and is IHA's highest ranking officer. *Id.*

8. The Board is given its authority to oversee and govern actions taken by IHA pursuant to REV. CODE OF THE CONSOL. CITY AND CNTY. tit. I, ch. 285, art. IV, §§ 285-411.

9. The Board has final decision-making authority for IHA. *Id.*

10. Hightower is an Asset Management Program (hereinafter "AMP") Director, and the property manager of Barton Towers. Hightower is an IHA employee and agent. Hightower operates her position with a high degree of autonomy, with essentially no oversight, and is permitted to create and set de facto policy for the tenants of Barton Tower.

11. Rufus "Bud" Myers is the Executive Director of IHA.

## PUBLIC HOUSING PROGRAMS

12. The United States Housing Act of 1937 established a public housing program aimed at providing safe, sanitary, and affordable housing to low-income families, the elderly, and the disabled. *See* 42 U.S.C. §§ 1437 *et seq.*

13. Under this Act, the states are empowered to create federally funded local Public Housing Authorities ("PHAs"), which are governed by a board of commissioners.

*Id.* These PHAs develop, own, and operate public housing units. Rent on these units is controlled by federal statute. *Id* at §1437a.

14. IHA is a PHA operating in Indianapolis, Indiana.

15. Any lease for PHA-controlled public housing must "require that the public housing agency may not terminate the tenancy except for serious or repeated violation of the terms or conditions of the lease or for other good cause." *Id* at § 1437d(1)(5); *see also* 24 C.F.R. §966.4 (providing examples of "other good cause," including criminal activity, and the discovery of false statements on an application for assistance).

## FACTUAL ALLEGATIONS

16. On July 30, 2015, Plaintiff moved into a public housing unit at Barton Towers. She has since resided at Barton Towers under automatically renewing, one-year term leases.

17. Plaintiff is disabled, as defined under 42 U.S.C. §§ 3601 *et seq.* (hereinafter "Fair Housing Act") because she suffers from post-traumatic stress disorder ("PTSD"), which substantially limits one or more of her major life activities.

18. For the entirety of the Plaintiff's tenancy, Hightower's interactions with Plaintiff have been hostile and adversarial. On the day that Plaintiff moved into Barton Towers, Hightower approached Plaintiff's brother and began arguing with him over where he parked his car. Hightower escalated her confrontation of Plaintiff's brother and other family members, and then stated that he and Plaintiff's family members were banned from Barton Towers.

19. Contrary to IHA's standard policy for banning individuals, Hightower did not provide any written notice, and offered no chance to appeal her decision to ban Plaintiff's family. She simply told Plaintiff that they were banned, and that Hightower would call the police if they attempted to visit Plaintiff at Barton Towers.

20. Hightower regularly calls Plaintiff "crazy" and taunts Plaintiff with derogatory hand gestures commonly understood to indicate that a person suffers from a mental condition.

21. In or around June 2016, Plaintiff began circulating a petition around Barton Towers to organize residents in addressing ongoing problems and concerns with the management of the building.

22. Soon after Plaintiff began her organizing efforts, Hightower began a systematic campaign to evict Plaintiff from Barton Towers in retaliation for her protected actions.

23. In June 2016, Plaintiff attempted to complete her mandatory annual recertification for public housing, which is required by HUD for continuing public housing eligibility. At Barton Towers this process overseen by Hightower.

24. However, Hightower refused to make arrangements for Plaintiff to complete the recertification process.

25. Fearful that Hightower's failure to complete recertification would result in eviction, Plaintiff sent a letter to IHA Executive Director Rufus "Bud" Myers ("Myers") to ask for help in her recertification.[1]

26. On June 13, 2016, Myers responded to Plaintiff's letter, stating that he would forward her recertification issue to another IHA department.

27. On June 15, 2016, two days after Plaintiff received Myers's response, Hightower sent Plaintiff a Notice of Lease Violation ("Notice").

28. The Notice alleged that Plaintiff engaged in "disruptive behavior" and behaved in a "threatening manner" toward Hightower. Specifically, Hightower alleged that Plaintiff screamed at her, and made "large arm movements," which made Hightower "fear for [her] safety."

29. Plaintiff denies Hightower's allegations, which were unsupported by any evidence.

30. On July 21, 2016, Hightower sent Plaintiff an Official Final Warning ("Final Warning") of Lease Termination, which alleged "continued and escalating threatening behavior toward the staff…at [Barton Tower]."

31. The Final Warning reiterated the claims contained in the Notice, but further characterized Plaintiff's alleged actions as "intimidating" and "bullying." The only new allegation contained in the Final Warning involved an interaction between Plaintiff and Hightower about a billing statement, in which Plaintiff innocently

---

[1] Plaintiff's letter to Myers also included a number of other allegations of Hightower's hostile actions toward Plaintiff.

pointed out that both she and Hightower grew up in Mississippi. Hightower

characterized this at intimidating, and stated that she contacted the Office of

Special Investigation.

32. It is unclear what The Office of Special Investigation is or its role within IHA.

33. The allegations contained in the Final Warning are either mischaracterized or

patently untrue. If a referral was made to the Office of Special Investigation, no

findings were substantiated against Plaintiff.

34. On July 22, 2016, the following day, Hightower sent Plaintiff a Notice of Lease

Termination ("First Lease Termination"). The First Lease Termination reiterated

the same allegations contained in the Notice and the Final Warning, but peppered

in some additional details to each incident, such as Plaintiff allegedly calling

Hightower "ignorant," and Hightower feeling "concerned" that Plaintiff knew she

was from Mississippi.

35. In the First Lease Termination, Hightower also claimed that she felt Plaintiff

posed "a direct threat to her safety" because Plaintiff allegedly spoke to Hightower

"through closed and tightly clenched teeth."

36. The First Lease Termination was based on IHA's "One Strike, You're Out"

policy, which was adopted to immediately evict tenants, with no warnings, for

criminal activity that threatens the health, safety, and right to peaceful enjoyment

of the premises by other residents.

37. The "One Strike, You're Out" policy is a mechanism designed to be used against tenants who pose serious and immediate threats, and application of the policy circumvents the employment of IHA's grievance procedure.

38. On July 26, 2016, Plaintiff filed suit against IHA to enjoin them from enforcing the First Lease Termination.

39. On August 4, 2016, attorneys representing Plaintiff sent a letter ("Attorney Letter") to Myers and IHA's General Counsel, which listed a number of concerns about the management and treatment of Plaintiff and other residents of Barton Towers. The attorney letter specifically alleged that Hightower violated the Fair Housing Act, invaded the privacy of tenants, failed to process necessary paperwork (such as Plaintiff's recertification), did not respond to routine maintenance requests, and created a general atmosphere of fear and hostility.

40. The Attorney Letter was specific in allegations and instances of mismanagement by Hightower, and requested for a meeting Myers and IHA's General Counsel to discuss the problems at Barton Towers.

41. On August 9, 2016, IHA's General Counsel and Myers responded to the Attorney Letter with a refusal to participate in a meeting.

42. On August 10, 2016, Hightower sent Plaintiff a rescission of the First Lease Termination, and, upon IHA's request, Plaintiff dismissed her complaint. Plaintiff continued to live and pay rent at Barton Towers.

43. On October 1, 2016, Plaintiff paid her rent as usual by depositing it through a slot outside Hightower's office. This is a commonly accepted way to pay rent at Barton Towers.

44. On the evening of October 1, 2016, a fire was started and set through the slot, which, according to Hightower, destroyed Plaintiff's rent check, as well as those of other tenants.

45. On October 10, 2016, Hightower sent Plaintiff a letter requesting a form to allow IHA to trace and receive a reissuance of the money order that Plaintiff used to pay her October 2016 rent. Plaintiff promptly submitted the requested information to Hightower.

46. After Plaintiff provided Hightower with the necessary documentation, she believed that the matter involving her destroyed rent check was resolved. Generally, IHA policy does not accept rent from residents who are behind in rent. Here, Plaintiff paid her rent for November 2016, which was accepted by Hightower, and she was given a receipt for her November rent by Hightower.

47. On November 7, 2016, Hightower sent Plaintiff a second Notice of Lease Termination ("Second Lease Termination"), based, again, on the "One Strike, You're Out" policy. The notice informed Plaintiff that she needed to vacate her apartment within 72 hours.

48. In the Second Lease Termination, Hightower alleged that Plaintiff engaged in "workplace violence" by blocking Hightower's egress from an elevator at Barton Towers.

49. Plaintiff denies the interaction described by Hightower in the Second Lease
Termination.

50. On December 9, 2016, IHA filed a lawsuit in Indiana state court for eviction
against Plaintiff for her alleged lease violations.

51. Plaintiff timely demanded a jury trial, which pursuant to Indiana court's Local
Rules, required IHA to replead its case in order to proceed. IHA failed to do so,
and the case against Plaintiff was dismissed.

52. In December 2016, Hightower stopped accepting Plaintiff's rent due to an alleged
nonpayment of October 2016 rent, even though Hightower had accepted
November 2016's rent and issued a receipt.

53. Since Hightower refused to accept Plaintiff's rent payment, Plaintiff has been
depositing (and continues to deposit) her monthly rent payment into Indiana Legal
Services, Inc.'s client escrow account.

54. On May 1, 2017, Plaintiff received a notice that IHA would terminate her lease on
June 30, 2017 ("Third Lease Termination"), and that IHA would take unilateral
measures to discontinue her automatically renewing lease.

55. The Third Lease Termination stated that it was based on a lease violation of
allegedly engaging in threatening and intimidating behavior toward Hightower.

56. IHA offers a two-step grievance procedure to allow residents to challenge actions
and decisions against them by IHA or IHA agents. This policy is incorporated by
reference in Plaintiff's lease.

57. The first step of the grievance procedure is to request an informal discussion with the property manager to attempt to resolve the issue. After the informal discussion, the manager is required to write a summary of the conversation and the result.

58. If a tenant is not satisfied with the summary and result of the informal discussion, he or she may engage in the second step, which is to request a hearing.

59. While the hearing is informal in nature, a tenant may present evidence and witnesses, and review his or her entire IHA file of complaints.

60. Although it is not stated in IHA's grievance procedure, under federal law, a tenant has the right to bypass or challenge a grievance at any point in the process and demand that the Board review the action.

61. On May 8, 2017, Plaintiff received another notice ("Fourth Lease Termination") based on an alleged nonpayment of rent, and that IHA would file an eviction against her if she did not move out by June 30, 2017. The Fourth Termination was based on the allegation that Plaintiff did not pay her rent in October 2016.

62. Hightower's continued efforts to threaten Plaintiff with eviction have greatly exacerbated Plaintiff's PTSD symptoms. She has incurred additional medical care, including increases of her medication dosages. Plaintiff has also been mentally unable to attend some days at work, causing her to endure decreased monthly earnings.

63. On May 12, 2017, Plaintiff provided a written Reasonable Accommodation Notice to Hightower, as well as the IHA's legal counsel.

64. Plaintiff's Reasonable Accommodation Notice indicated that she had a disability, PTSD, and that is was exacerbated by Hightower's actions, which caused her increased stress and anxiety. Plaintiff asked that she be permitted to make her rent payments and receive correspondence from an IHA employee other than Hightower. Plaintiff was even willing to go to the IHA corporate office at her own expense to pay her rent. Plaintiff made this request to accommodate her disability.

65. On June 5, 2017, Defendant's counsel sent a letter to Plaintiff's counsel denying Plaintiff her Reasonable Accommodation Request, offering no explanation other than simply stating that it was not reasonable.

66. On May 12, 2017, Plaintiff submitted written notices requesting a grievance hearing on both the Third Lease Termination and Fourth Lease Termination.

67. On May 15, 2017, Hightower sent Plaintiff letter informing her that an informal hearing would take place on May 22, 2017.

68. IHA's legal counsel informed Plaintiff's counsel that the informal hearing would cover both the nonrenewal and nonpayment issues.

69. On May 22, 2017, the hearing took place at Barton Towers. Present were: Plaintiff, Plaintiff's counsel, Hightower, IHA's counsel, and IHA employee Francine Jones ("Jones"), who served as the hearing officer. Like Hightower, Jones is an AMP Director at IHA.

70. Plaintiff and her counsel believed, based on representations from IHA, that she was going through the first step of the grievance procedure. At the grievance both

the hearing officer and Hightower confirmed that they also believed they were participating in the informal, first step of the grievance procedure.

71. However, IHA's legal counsel interjected during the hearing and informed Plaintiff that she was participating in a formal hearing, presumably step two of the grievance procedure. Plaintiff was never given the opportunity to participate in step one of the grievance process, which violated IHA's own written policy and Plaintiff's lease terms.

72. During the hearing, Hightower read a list of alleged incidents involving Plaintiff that led to Hightower's decision not to renew Plaintiff's lease.

73. When Plaintiff's counsel attempted to object to or clarify Hightower's allegations, IHA's legal counsel instructed him not to interrupt Hightower.

74. Hightower was the sole accuser against Plaintiff, and Plaintiff was never given the opportunity to confront or challenge Hightower's allegations against her.

75. Plaintiff's counsel reviewed Plaintiff's IHA file prior to the hearing, but a number of incidents Hightower alleged during the hearing were not contained within that file.

76. Moreover, Plaintiff was not given an opportunity to examine the documents referenced by Hightower during the hearing.

77. Plaintiff strongly denounces Hightower's claims as false.

78. On May 30, 2017, Jones issued her findings of the hearing, entitled: "NOTICE OF OUTCOME: Formal Hearing" ("Outcome"), and upholding the Third Termination Notice.

79. The Outcome was silent as to a decision on the Fourth Lease Termination.

80. The Outcome issued by Jones simply states a Summary of Facts. The "facts" found by Jones are nothing more than a reiteration of the allegations stated by Hightower, with no reasoning or proof offered.

81. On June 7, 2017, Plaintiff, by her attorney, sent a notice to the Board requesting an administrative appeal of her case.

82. The Board never responded to Plaintiff's request.

83. On July 13, 2017, IHA filed to evict Plaintiff from Barton Towers.

84. On August 18, 2017, the Court dismissed IHA's case, and IHA has not taken any additional steps to refile a case against Plaintiff.

85. Plaintiff continues to reside at Barton Towers, but Defendants continue to refuse to accept Plaintiff's rent payments and have not recertified her, as required by federal regulation.[2]

86. Plaintiff believes Defendant's actions to be a thinly-veiled attempt to force her out of IHA housing due to her criticism of Hightower's abusive practices and Plaintiff's efforts to organize fellow tenants to address ongoing concerns.

## INJUNCTIVE AND DECLARATORY RELIEF

87. Injunctive relief is necessary to prevent Defendants from continuing to engage in the unlawful practices contained herein. Plaintiff is under constant threat of eviction from her protected property interest of her public housing apartment unit.

---

[2] Plaintiff technically has a lease as her lease automatically renews absent proper cause, but IHA has yet to produce an updated formal contract.

Plaintiff has no plain, speedy, or adequate remedy at law, in that pecuniary

compensation alone would not afford adequate and complete relief. Unless

Defendants are restrained from committing further illegal acts, their above-

described acts will cause great and irreparable damage to Plaintiff.

88. An actual controversy exists between Plaintiff and Defendants concerning her

rights, privileges, and obligations that Plaintiff contends that Defendant's above-

mentioned actions have violated and will continue to violate her rights under

federal law and state law, and Defendants contend in all respects to the contrary.

## COUNT I: SUBSTANTIVE DUE PROCESS

89. Plaintiff alleges and incorporates herein each and every allegation continued in the

above paragraphs.

90. Plaintiff's brings this claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), and

alleges that Defendants violated her right of due process under the Fourteenth

Amendment of the United States Constitution. U.S. CONST. amend. XIV, sec. 1.

91. Plaintiff has a protected property interest in her apartment unit at Barton Towers.

92. Defendants were acting under the color of state law when they deprived Plaintiff

of her protected property interest of her public housing apartment unit.

93. IHA practices a regular policy and has a custom of depriving residents of adequate

due process procedures before infringing on resident's protected property interest.

94. Defendants violated Plaintiff's due process rights by: (1) refusing to renew her

lease based solely on unsubstantiated hearsay; (2) making termination decisions

unsupported by any evidence; (3) improperly placing the burden of proof on the

Plaintiff; (4) failing to issue a written decision stating the factual and legal basis for the decision; and (6) failing to grant an opportunity to confront and cross-examine evidence and witnesses.

95. As a result of Defendant's actions, Plaintiff is entitled to injunctive and declaratory relief as Defendant's conduct is ongoing.

## COUNT II: PROCEDURAL DUE PROCESS

96. Plaintiff alleges and incorporates herein each and every allegation contained in the above paragraphs.

97. Plaintiff's brings this claim pursuant to Section 1983, and alleges that Defendants violated her right of due process under the Fourteenth Amendment of the United States Constitution. U.S. CONST. amend. XIV, sec. 1.

98. Plaintiff has a protected property interest in her apartment unit at Barton Towers.

99. Defendants were acting under the color of state law when they deprived Plaintiff of her protected property interest of her public housing apartment unit.

100. IHA practices a regular policy and has a custom of depriving residents of adequate due process procedures before infringing on resident's protected property interest.

101. Defendants maintain a two-step grievance procedure that is incorporated into leases it grants to all residents.

102. Plaintiff attempted to exercise her rights under the prescribed grievance procedure, but Defendants failed to follow their own two-step process.

103. Plaintiff requested an informal hearing with the property manager within the
time limits outlined in the grievance procedure, but it was not granted. Plaintiff
was prepared for an informal hearing, but found herself in a formal hearing where
she was given no opportunity to present evidence or confront and cross-examine
her accuser.

104. The hearing officer was not a disinterested third party, as she was a colleague
and of the same corporate status as Hightower, and also allowed IHA's counsel to
control the hearing.

105. As a result of Defendant's actions, Plaintiff is entitled to injunctive and
declaratory relief as Defendant's conduct is ongoing.

## COUNT III: FIRST AMENDMENT

106. Plaintiff alleges and incorporates herein each and every allegations contained in
the above paragraphs.

107. The First Amendment to the United States Constitution prohibits states from
abridging the freedom of speech and recognizes the right for people to peacefully
assemble and to petition the government for redress of grievances. U.S. CONST.
amend. I.

108. Defendants were acting under color of state law as authorized by Ind. Code § 37-
7-18.

109. Plaintiff's petition and attempts to organize Barton Tower residents regarding
problems with building management are protected speech under the First
Amendment.

110. Defendant's continuous attempts to evict Plaintiff from Barton Towers was in retaliation for Plaintiff's protected speech.

111. Such retaliatory action is prohibited by the First Amendment and is actionable under Section 1983.

## COUNT IV: VIOLATION OF THE FAIR HOUSING ACT

112. Plaintiff alleges and incorporates herein each and every allegation contained in the above paragraphs.

113. Barton Towers is a "dwelling" within the meaning of 42 U.S.C. § 3602(b).

114. Plaintiff is a person with a disability within the meaning of 42 U.S.C. § 3602(h).

115. Defendant's actions constitute:

    a.  A refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations were necessary to afford Plaintiff an equal opportunity to use and enjoy Barton Towers, in violation of the Fair Housing Act, 42 U.S.C. §3604(f)(3)(B).

    b.  Interference with the rights of Plaintiff in the exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of her having aided or encouraged persons with disabilities in the exercise or enjoyment of rights granted or protected by the Fair Housing Act, in violation of 42 U.S.C. § 3617.50. Defendant acted intentionally, willfully, and in disregard for the rights of Plaintiff.

116. Defendants acted intentionally, willfully, and in disregard for the rights of others.

117. Plaintiff is an "aggrieved person" within the meaning of 42 U.S.C. §§ 3602(i)

and 3613, and has suffered harm and damages as a result of Defendant's conduct.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## AGAISNT HIGHTOWER IN HER INDIVIDUAL CAPACITY

118. Plaintiff alleges and incorporates herein each and every allegation contained in

the above paragraphs.

119. Hightower's actions constitute a willing attempt to inflict emotional distress

upon Plaintiff because she engaged in "extreme and outrageous" conduct that

intentionally and recklessly caused severe emotional distress to Plaintiff.

120. Hightower engaged in a continuous and vicious campaign to evict Plaintiff from

her home, which has been going on since June 2016. Throughout that time,

Hightower has made false claims against Plaintiff, refused to accept her rent

money, and constantly makes Plaintiff fearful that she will be evicted from her

apartment and homeless. In addition, Hightower improperly banned her family

from visiting her, thus, further isolating Plaintiff from her personal support system.

Hightower abused her position of power to prey on Plaintiff, and, thus,

Hightower's actions constitute extreme and outrageous conduct.

121. Hightower is aware of Plaintiff's disability, PTSD, and that it is a mental disease.

Furthermore, Hightower knows that by inflicting actions onto Plaintiff that

threaten Plaintiff's ability to feel safe and secure in her home that Plaintiff's

condition will exacerbate, and cause significant, permanent damage. Thus,

Hightower's actions were intentional and reckless.

122. Plaintiff was forced to seek significant and increased medical care to treat her PTSD due to Hightower's conduct toward her. In addition, Plaintiff has lost income from her job because Hightower's actions render Plaintiff too ill to function at work. Hightower's actions have caused Plaintiff to suffer severe emotional distress.

WHEREFORE, Plaintiff requests that this Court:

123. Assume jurisdiction for this case;

124. Set a speedy hearing for Plaintiff's request for a preliminary injunction;

125. Issue a preliminary injunction ordering Defendants to cease in attempting to remove Plaintiff from her public housing unit until the resolution of this cause;

126. Enjoin Defendants from terminating tenancy without providing fair hearings that comport with due process, which, at minimum, require that:

   a. Residents receive notices that clearly state a basis for the termination or nonrenewal of tenancy, and the right to an informal hearing;

   b. Residents are provided an opportunity to examine evidence which forms the basis for termination or nonrenewal of tenancy;

   c. Residents are provided an opportunity to contest evidence and confront and cross-examine witnesses against them;

   d. The burden of proof lies on the Defendants to prove the basis for termination or nonrenewal of tenancy;

   e. The hearing officer does not base her decision solely on unsubstantiated, and not cross-examined testimony of the accusing party; and

f.   Residents are provided with a statement of the reasons for the decision to terminate or not renew his or her tenancy on both a factual and reasoned basis.

127. Enjoin Defendants from taking adverse action against Plaintiff and other residents in a manner that violates due process of law.

128. Declare that Defendants have violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution by not renewing Plaintiff's lease without a fair hearing.

129. Declare that Defendants have violated federal law and HUD policy by failing to follow their own grievance procedures.

130. Award Plaintiff compensatory and punitive damages as allowed by law.

131. Award Plaintiff reasonable attorney's fees and costs as allowed by the law; and

132. Award such other and further relief that the Court may deem fit, just, and proper.

<u>VERIFICATION</u>

I AFFIRM UNDER PENALTIES FOR PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

_____
                                Patricia A. Badgett, Plaintiff

Respectfully submitted,

INDIANA LEGAL SERVICES, INC.

_____
Amy Freeland, Attorney # 31679-34

_____
Brandon Beeler, Attorney # 28213-49